THE UNION BANK OF LOUISIANA *v.* MANDEVILLE MARIGNY and another, Dative Testamentary Executors of Peter L. Sloane, deceased.

Under the 24th section of the act of 3d April, 1832, incorporating the Union Bank of Louisiana, the right of the bank to seize and sell property mortgaged to it for stock or loans, is not impaired by the death of the mortgagor ; and the bank may proceed to enforce the sale of the property *via executiva,* where it has a title importing a confession of judgment, or, *via ordinaria,* by obtaining a judgment against the representatives of the mortgagor (C. P. 61, 63, 64), when it has no such title ; and these proceedings, to avoid the delays and formalities from which it was the intention of the legislature to relieve the bank, must necessarily be before the ordinary tribunals, as a Court of Probates can issue no seizure and sale, nor *fi. fa.,* and can only order the sale of the property and payment of the debt in due course of administration.   C. P. 986, 987, 990, 991, 993.

The words " *according to law,* " in the 24th section, refer to the seizure and sale authorized by that section, and mean that all the requirements of the law as to notice, appraisement, advertisement, &c., must be complied with—not that payment must be sought in the Probate Court, concurrently with the other creditors of the deceased.

If the proceeds of the sale of the mortgaged property should not pay the whole claim, the bank must go into the Court of Probates for the balance, and, if the claim should not be admitted, sue the representatives of the deceased in that court; and this, whether the original proceedings were *via executiva,* or *via ordinaria.*

APPEAL from the District Court of the First District, *Buchanan,* J.

*Denis,* for the plaintiffs.

*G. Strawbridge,* for the appellants.

MORPHY, J.   The New Orleans Gas Light and Banking Company, alleging themselves to be aggrieved by a judgment rendered in this case, took a rule on the plaintiffs and defendants, to show cause why they should not be allowed to appeal therefrom.  On their showing that they held a note of the deceased for $1,926 30, bearing mortgage on certain lots of ground that had been sold under said judgment, the appeal was granted. The record shows that, in April, 1840, P. L. Sloane became a stockholder of the Union Bank, by the purchase of one hundred and fifty shares of its capital stock, together with the above mentioned lots on which the stock rested, and which were mortgaged to secure it; that having assumed the obligations of the original stockholder, he furnished his own stock note for $4,875,

payable on the 1st of March, 1841; and that on his failure to pay the instalments which have since become due, the present suit was brought by the bank against his executors to obtain a judgment, in order to seize and sell the stock and mortgaged property. Judgment was obtained in due course of law, and the property was seized and sold. There being a surplus of $1,284 59 in the hands of the sheriff, after paying the bank, this balance was paid over to the executors on their demand, to be distributed in the Court of Probates of the parish of Orleans, where the succession had been opened. It is urged by the appellants that the whole proceeding had in the District Court is null and void for want of jurisdiction, as under article 924 of the Code of Practice, the Court of Probates has exclusive jurisdiction to order the sale of succession property administered by executors or administrators, and to decide on claims for money which are brought against successions so administered. This position would undoubtedly be correct in the case of an ordinary mortgage creditor; but the question is, whether the plaintiffs, under their charter, were not authorized to proceed as they have done. The 24th section of it (Acts of 1832, p. 62) provides, that " the Union Bank shall have the right to cause to be seized and sold according to law, the property mortgaged, in whose hands soever the sa.ne may be found, *in the same manner, and with the same facilities as if it was seized in the hands of the mortgagor*, notwithstanding any sale, or change of the title thereof, by *inheritance* or otherwise." The 27th section provides: "That if any individual who shall have obtained from the said bank a loan secured by mortgage, as aforesaid, shall make a voluntary or forced surrender of property to his creditors, the said mortgaged property shall not be comprised in the cession, or in the mass of his estate, except in case of payment of the sum due to the bank, and secured by said mortgage; but the said bank may proceed by an order of seizure and sale against the said property in the same manner as if no surrender had been made, and the surplus of the proceeds of the sale, after paying the debts due to the bank, with costs, shall be paid over to his legal representatives." From these, and other provisions of the charter, it is manifest that, in view of the interest

which the State had in the welfare of this institution, in whose favor its bonds were to be issued, the legislature intended to confer upon it peculiar privileges, and great facilities in the collection of its claims. Thus, notwithstanding the death or bankruptcy of the mortgagor, or sale of the property mortgaged, it may be proceeded against by the bank in whatever hands found, in the same manner as if yet in the hands of their debtor, The plaintiffs then finding the property subject to their mortgage in the hands of the defendants, brought this suit against them, as they could have done against their debtor in the District Court. Had they gone into the Court of Probates, as it is concluded they should have done, they could not have *caused the property to be seized and sold in the same manner, and with the same facilities, as if it was seized in the hands of the mortgagor.* The judge of that court, which is one of limited jurisdiction, would not, and could not have issued an order of seizure and sale, nor could he have issued a *fieri facias* under a judgment by him rendered. In pursuance of the Code of Practice, he must have ordered the sale of the property to be made, and the debt to be paid in due course of administration, thus subjecting the plaintiffs to all the delays and formalities which it was the object of the law to relieve them from. Code of Practice, arts. 986, 987, 990, 991, 993. It is said that the words, " *according to law,*" used in the 24th section, mean that, in case the debtor dies, the bank must proceed in the manner pointed out by law, and must seek their payment in the Court of Probates concurrently with the other creditors of the succession. These words we understand to refer to the seizure and sale authorized to be made ; that is, that all the requirements of the law must be complied with in regard to notice, appraisement, advertisements, &c., in such seizure and sale. The construction contended for would render the section a dead letter. It would do away with the privilege and right of seizing intended to be given, notwithstanding the death of the mortgagor, and would place the bank upon the footing of any other mortgage creditor. It is insisted, that the only effect of the 24th section of the charter, is that of the pact *de non alienando* in a contract of sale. We think that it is something more. Such a stipulation in a

sale is of use or value to the seller, only in case the buyer sells the property.   As long as it remains in his possession, the rights of the seller are the same as if no such clause existed.   If the buyer dies he can no longer cause the property to be seized and sold, but, like all the other creditors of the deceased, he must seek his payment in the Court of Probates; and a sale made under the authority of that court, will have the effect of raising his mortgage, and transferring the rights he had on the property to its proceeds in the hands of the administrator of the estate.   Under the 24th section of the charter, the right of the bank to seize and sell the property mortgaged to it, is not impaired by the death of the mortgagor; and if they do not exercise their right, no sale under the order of the Court of Probates can have the effect of raising their mortgage.   *Williams* v. *The Bank of Louisiana*, 17 La. 384.   To exercise their right to seize and sell the property subject to their mortgage, the bank could, in our opinion, go before any court where they could have proceeded against the mortgagor himself.   But it is urged that, admitting their right to do so, the bank have not sued out an order of seizure and sale against the property, but have brought their action in the ordinary form, and have demanded a judgment against the executors with mortgage on the property. The hypothecary action, which has for its object to seize and sell property mortgaged to secure a debt, can be exercised in two ways : *via executiva*, when the title of the creditor imports a confession of judgment, or, *via ordinaria*, when the creditor has no executory title against his debtor, as was the case with the bond of Sloane, on which this suit was brought.   In the latter proceeding a judgment must be obtained against the debtor in the usual form, before the property can be seized and sold. Code of Practice, arts. 61, 63, 64.   But both proceedings tend to, and bring about the result authorized by the charter, to wit, the seizure and sale of the property.   It brought a sum more than sufficient to satisfy the bank, and the balance was paid over to the representatives of the estate; but if it had not brought enough to pay the whole claim, the bank would have had to go into the *concurso* in the Court of Probates, for the balance.   If their claim had not been admitted, they would

have had to bring suit against the executors in that court for such balance. The judgment of the District Court could have availed them only so far as it rendered their title executory, and authorized the seizure and sale of the property mortgaged. By pursuing the *via ordinaria*, the bank could have obtained, and has obtained nothing more than if they had sued out an order of seizure and sale under a title authorizing that summary proceeding.

*Judgment affirmed.*